```
                IN THE UNITED STATES DISTRICT COURT FOR THE
                       EASTERN DISTRICT OF OKLAHOMA

DONNA M. BARNETT on behalf of    )
A.D.B., a minor,                 )
                                 )
           Plaintiff,            )
                                 )
v.                               )   Case No. CIV-13-218-RAW-KEW
                                 )
CAROLYN W. COLVIN, Acting        )
Commissioner of Social           )
Security Administration,         )
                                 )
           Defendant.            )
```

## REPORT AND RECOMMENDATION

Plaintiff Donna M. Barnett ("Plaintiff"), on behalf of the minor child, A.D.B. ("Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability for persons under the age of 18 is defined by the Social Security Act as the "a medically determinable physical or mental impairment or combination of impairments that causes marked

and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906. Social Security regulations implement a three-step sequential process to evaluate a claim for Child's Supplemental Security Income Benefits under Title XVI of the Social Security Act. *See*, 20 C.F.R. § 416.924.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute

---

[1] At step one, a child will not be deemed disabled if he is working and such work constitutes substantial gainful activity. The regulations require the claimant to establish that he is not engaged in substantial gainful activity. At step two, a child will not be found disabled if he does not suffer from a medically determinable impairment that is severe. At step three, a child's impairment must meet a listing and must meet the duration requirement of 12 months. 20 C.F.R. § 416.924(b), (c) and (d).

2

its discretion for that of the agency.  <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on April 21, 2001 and was 9 years old when she filed for disability benefits and 11 years old on the date the ALJ issued his decision.  Claimant is alleged to have become disabled due to a learning disability, anxiety, attention deficit hyperactivity disorder ("ADHD"), asthma, and seizures.

**Procedural History**

On April 12, 2011, Claimant, through Plaintiff, protectively applied for Supplemental Security Income under Title XVI of the Social Security Act (42 U.S.C. § 1381 *et seq.*).  Claimant's application for benefits was denied in its entirety initially and on reconsideration.  On June 26, 2012, Claimant and Plaintiff appeared at an administrative hearing before Administrative Law Judge Richard Kallsnick (the "ALJ").  The ALJ issued an unfavorable decision on July 27, 2012.  On March 19, 2013, the Appeals Council

denied review of the ALJ's findings. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step three of the sequential evaluation. He determined that Claimant's condition did not meet a listing and she had not been under a disability during the relevant period.

**Review**

Plaintiff asserts the ALJ committed error in: (1) failing to consider Claimant's ADHD as a severe impairment; (2) concluding Claimant had only a marked limitation in the Acquiring and Using Information domain; and (3) concluding Claimant had less than a marked limitation in the Attending and Completing Tasks domain.

**The Step Two Analysis**

Plaintiff contends the ALJ should have found Claimant's ADHD as a severe impairment. In his decision, the ALJ determined Claimant suffered from the severe impairments of a learning disability, asthma, and seizures. (Tr. 19). The ALJ also determined Claimant did not meet a listing or the equivalency of a listing, singly or in combination of his impairments. (Tr. 20-21). The ALJ analyzed the six domains of functioning in light of

Claimant's severe impairments.  He concluded Claimant had no limitations in the areas of interacting and relating with others, moving about and manipulating objects, and the ability to care for herself.  The ALJ also found Claimant had a less than marked limitation in the domains of attending and completing tasks and health and physical well-being.  He did find Claimant had a marked limitation in the remaining domain of acquiring and using information.  (Tr. 22-28).

Claimant suggests that the ALJ should have found her ADHD to be a severe impairment.  The ALJ discussed the allegations of ADHD extensively in his decision.  (Tr. 21-22).  Claimant was examined by Dr. Jennifer Daniell, a psychologist, May 3, 2011.  Dr. Daniell concluded Claimant had mild mental retardation as well as a specific learning disability in the area of reading.  Emotionally, Claimant was found to have a mixture of anxiety and ADHD, resulting in a diagnosis of ADHD and Anxiety Disorder.  Dr. Daniell expressed "surprise" at Claimant's teachers' findings that Claimant was not a behavioral problem in the classroom.  She stated that she observed Claimant was a very fidgety child who talked excessively at times you would expect a child to be quiet and showed a tendency to respond impulsively when the test became difficult.  She recommended medication for both ADHD and anxiety.  (Tr. 185).

Claimant's teachers completed Vanderbilt Assessment forms on

her. Her Reading and English teacher found Claimant to only occasionally fail to give attention to details or make careless mistakes in schoolwork. (Tr. 200). Her reading and written expression were rated as "problematic" while her math was "average." Her classroom behavioral performance was "excellent" and "above average." (Tr. 201). Another teacher found problems with Claimant's attention, fidgeting, leaves seat, and talks excessively. She also found Claimant to be fearful, anxious, or worried. (Tr. 202). She evaluated Claimant's reading and mathematics as "somewhat of a problem" and her ability to give written expression as "problematic." This teacher also found Claimant's relationship to peers and her ability to follow directions as "somewhat of a problem." (Tr. 203). Claimant's school counselor did not make findings on attention issues but found Claimant had "somewhat of a problem" relating to peers and experienced anxiety and loneliness. (Tr. 204-05).

Claimant was placed on Concerta for ADHD in June of 2011. (Tr. 283). It was noted that Claimant "doesn't like to go to sleep, excessive behavior, very sassy and, seems nervous a lot of the time." Id.

The ALJ did not strive to resolve the conflict between Dr. Daniell's findings and Claimant's teachers' evaluations. While this Court agrees the Dr. Daniell's mere diagnosis of ADHD is not

6

as important as any additional functional limitations that might result from the condition, Dr. Daniell cites to numerous areas of functional limitation caused by Claimant's ADHD in the record. Bernal v. Bowen, 851 F.2d 297, 301 (10th Cir. 1988). The ALJ makes the curious statement that "there appears to be some inconsistency regarding the functional limitations and allegations, yielding to a partial allegation credibility assumption." (Tr. 22). This Court is unsure as to the ALJ's meaning in this statement. Ultimately, he must resolve such conflicts in the evidence and he did not do so with regard to Claimant's ADHD condition. On remand, the ALJ shall reconsider the evidence regarding this condition, resolve any conflict in the evidence of functional limitations resulting from it, and consider any such limitations in his decision.

### Step Three Finding on Limitations in Acquiring and Using Information

The ALJ concluded that Claimant had a marked limitation in the area of acquiring and using information in the six functional equivalence domains. (Tr. 22-23). Claimant contends the ALJ should have found she had an "extreme" limitation in this domain citing to her full scale IQ score of 66 in arguing she meets Listing 112.05.

To functionally equal a listing, a claimant's impairment or

7

combination of impairments must result in "marked" limitations in at least two of the six domains of functioning, or in "extreme" limitation in at least one domain. 20 C.F.R. §§ 416.926a(a), (g)-(l). Dr. Charles Delhotal and Dr. Sally Varghese completed a Childhood Disability Evaluation Form on Claimant in May and June of 2011. They concluded Claimant had a marked limitation in the domain of Acquiring and Using Information. These doctors primarily relied upon the teacher questionnaires for concluding Claimant was functioning at approximately a third grade level in reading and mid second grade to third grade level in written language. She was noted to have a slight problem with learning new material, recalling and applying previously learned material. The IEP indicated a severe discrepancy between her ability and achievement in written expression. Drs. Delhotal and Varghese noted Claimant's full scale IQ of 66. (Tr. 292).

Claimant relies almost exclusively upon her IQ score of 66 to support a finding of extreme limitation in this domain. Listing 112.05 requires in pertinent part:

> 112.05 Mental Retardation: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied.
>
> \* \* \*

> D. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function;

20 CFR Pt. 404, Subpt. P, App. 1, 112.05.

While this Court does not agree that the objective medical evidence supports a finding of extreme limitation, such a finding is not required to meet Listing 112.05. The combination of Claimant's IQ score and the possibility of limitations resulting from ADHD would be sufficient to meet the Listing should the ALJ determine that the resolution of the conflict between the teacher questionnaire responses and Dr. Daniell's findings should favor a finding that ADHD constitutes an impairment with functional limitations.

As a point of guidance, this Court agrees with Defendant that Claimant must meet the capsule definition of mental retardation in order to satisfy Listing 112.05. *See*, <u>Wall v. Astrue</u>, 561 F.3d 1048, 1062 (10th Cir. 2009). Any conclusion that Claimant does or does not meet this definition, however, is mere post-decisional justification by Defendant. The ALJ must make the appropriate findings for this Court to review. Claimant's assertion that an IQ diagnosis of 70 or below and ADHD automatically qualifies him for Listing 112.05 represents an oversimplification and misunderstanding of the Listing's requirements.

did recognize that Claimant had undergone psychological testing to determine his intelligence level. (Tr. 21). Specifically, Claimant was tested with the Wechsler Intelligence Scale for Children - Fourth Edition (WISC-IV) by Dr. B. Todd Graybill in August of 2009. This testing revealed Claimant had a verbal comprehension index score of 73, perception reasoning of 82, working memory of 68, processing speed of 78, and a full scale intelligence scale score of 70. He was diagnosed in the borderline range of intellectual functioning. (Tr. 301-02). This diagnosis should have led the ALJ to consideration of the applicability of Listing 112.05D, which requires in pertinent part:

> 112.05 Mental Retardation: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied.
> \* \* \*
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function;
>
> 20 CFR Pt. 404, Subpt. P, App. 1, 112.05.

The ALJ's generic reference to his consideration of the listings and Claimant's failure to meet the same is not sufficiently detailed for this Court to consider whether the appropriate criteria under Listing 112.05D has been satisfied through the ALJ's analysis. As a result, the ALJ shall on remand set forth his findings with regard to this listing as well as any other obviously applicable listing with specificity. As a point of guidance, this Court agrees with Defendant that Claimant must meet the capsule definition of mental retardation in order to satisfy Listing 112.05D. *See*, Wall v. Astrue, 561 F.3d 1048, 1062 (10th Cir. 2009). Any conclusion that Claimant does or does not meet this definition, however, is mere post-decisional justification by Defendant. The ALJ must make the appropriate findings for this Court to review. Claimant's assertion that an IQ diagnosis of 70 or below and ADHD automatically qualifies him for Listing 112.05D represents an oversimplification and misunderstanding of the Listing's requirements.

**Step Three Finding on Limitations in
Acquiring and Using Information**

Claimant also contends he is markedly impaired in the domain of *Attending and Completing Tasks* in the six domains of function which the ALJ was required to assess in order to determine if

11

Claimant's impairments are functionally equivalent to a listing. 20 C.F.R. § 416.926a(a)(1)-(3). The ALJ found Claimant was less than markedly limited in the area of *Attending and Completing Tasks*. (Tr. 23-24).

In order to have a marked impairment in this domain, the regulations require the following for a person in Claimant's age range:

> (h) Attending and completing tasks. In this domain, we consider how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace at which you perform activities and the ease with which you change them.
>
> (1) General.
>
> (i) Attention involves regulating your levels of alertness and initiating and maintaining concentration. It involves the ability to filter out distractions and to remain focused on an activity or task at a consistent level of performance. This means focusing long enough to initiate and complete an activity or task, and changing focus once it is completed. It also means that if you lose or change your focus in the middle of a task, you are able to return to the task without other people having to remind you frequently to finish it.
>
> (ii) Adequate attention is needed to maintain physical and mental effort and concentration on an activity or task. Adequate attention permits you to think and reflect before starting or deciding to stop an activity. In other words, you are able to look ahead and predict the possible outcomes of your actions before you act. Focusing your attention allows you to attempt tasks at an appropriate pace. It also helps you determine the time needed to finish a task within an appropriate timeframe.
>
> (2) Age group descriptors-

* * *

(iv) School-age children (age 6 to attainment of age 12). When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a(h).

In this area, the ALJ again favored the reports of Claimant's teachers, a non-acceptable medical source, over the findings of Dr. Daniell. Until this conflict in the evidence is adequately resolved under the correct criteria, this Court cannot find that the ALJ appropriately found less than marked limitations in this domain. On remand, the ALJ shall re-examine Dr. Daniell's opinion under the correct standard for evaluation and determine whether Claimant's limitation in this domain should be marked or less than marked.

## Conclusion

Based upon the foregoing, the undersigned Magistrate Judge finds the decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge respectfully recommends

the ruling of the Commissioner of Social Security Administration be **REVERSED** and the case **REMANDED** for further proceedings.

The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of the judgment of the District Court based on such findings.

DATED this 15th day of September, 2014.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE